Case 2:26-cm-00034-SGS *SEALED* Document 1 Filed 05/15/26 Page 1 of 25 PageID #: 1

FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
May 15, 2026
OFFICE OF THE CLERK

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the
Western District of Arkansas
Fort Smith Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF RECORDS, DATA AND INFORMATION STORED AT PREMISES CONTROLLED BY APPLE, INC., IN ASSOCIATION WITH TWO SPECIFIED APPLE ACCOUNTS | Case No. 2:26-CM- 2:26-cm-00034<br>**Filed Under Seal** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property located in the Northern District of California *(identify the person or describe property to be searched and give its location)*:

**See "Attachment A" (This Court has authority to issue the requested search warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A), and Federal Rule of Criminal Procedure 41.)**

there is now concealed *(identify the person or describe the property to be seized)*:

**See "Attachment B"**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

[ x] evidence of a crime;
[ x] contraband, fruits of crime, or other items illegally possessed;
[ x] property designed for use, intended for use, or used in committing a crime;
[ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to violations, in the Western District of Arkansas, of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution and/or possession with intent to distribute a controlled substance |
| 21 U.S.C. § 843(b) | Use of a communications facility in violating 21 U.S.C. §§ 801 et seq. |
| 21 U.S.C. § 846 | Attempt and/or conspiracy to commit a violation of 21 U.S.C. §§ 801 et seq. |
| 18 U.S.C. § 924(c) | Carrying, using or possessing a firearm in furtherance of a drug trafficking felony |
| 18 U.S.C. § 922(o) | Unlawful possession of a machinegun |

The application is based on these facts: *(See attached affidavit of FBI Special Agent Timothy S. Barth)*

[ x] Continued on the attached sheet.

[ ] Delayed notice of _____ days (give exact ending date if more than 30 days: ______________) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*(Appearing by telephone call to 870-677-6076)*
Special Agent Timothy S. Barth, Federal Bureau of Investigation, *Affiant*

via tele. @ 2:14pm 15 May 2026 SGS

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1, by appearing via telephone call.

Date: 15 MAy 2026

*Judge's signature*

City and state: El Dorado, AR

Hon. Spencer G. Singleton, U.S. Magistrate Judge, W. D. Ark.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF RECORDS, DATA AND INFORMATION STORED AT PREMISES CONTROLLED BY APPLE, INC., IN ASSOCIATION WITH TWO SPECIFIED APPLE ACCOUNTS | Case No. 2:26-CM- 2:26-cm-00034<br><br>**FILED UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, Timothy S. Barth, being first duly sworn, state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), having been so employed since September 2019. I am currently assigned to the FBI Little Rock Division's Fort Smith Resident Agency, where I am primarily tasked with conducting criminal enterprise investigations. In that capacity, I have garnered substantial training and experience in investigating violent and drug trafficking offenses, as well as in the detection, disruption, and dismantling of major drug trafficking and other criminal organizations. As an FBI Special Agent, I have employed, or assisted other investigators in employing, many techniques proven effective in such investigations, including conducting physical and electronic surveillance, recruiting and handling confidential informants, making controlled purchases of narcotics, and applying for and executing federal search and arrest warrants. I have also become familiar with how controlled substances like marijuana, cocaine, methamphetamine, fentanyl, and others are produced, packaged, transported, distributed and consumed, as well as how drug traffickers and users commonly employ mobile telephones and other similar electronic communication devices to aid those activities. With respect to such communications, I have also become familiar with narcotics-related slang or jargon, and its standard usages or meanings when employed by illicit drug traffickers and consumers.

2. Except as otherwise noted, the statements contained in this affidavit are based in part on information provided by law enforcement officers and my experience as an FBI Special Agent. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, or that information was provided by, another law enforcement officer, the officer in question may have either direct or hearsay knowledge of the subject matter of the statement.

3. Because I present it for the limited purpose of applying for a warrant to search the Apple Accounts described in Attachment A, this affidavit does not include *all* facts uncovered in the investigation described below. Instead, it includes only those facts I believe are relevant to the issue whether probable cause exists to conduct that search.

**DESCRIPTION OF PROPERTY TO BE SEARCHED AND SEIZED**

4. I make this affidavit in support of an application for a search warrant under Title 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), to require Apple, Inc., and its parent and subsidiary entities (hereafter collectively "Apple") to disclose to the government records, data and other information, including the contents of communications, held by Apple in connection with the following two (2) Apple Accounts further described in Attachment A (hereafter collectively the "TARGET ACCOUNTS"):

a. An Apple Account associated with email address *jaylincbred@gmail.com*, telephone number (479) 285-1875, and Apple Directory Services Identifier (DSID) 8332867844; and

b. An Apple Account associated with email address *jaylinc28@yahoo.com*, telephone number (479) 285-1875, and Apple Directory Services Identifier (DSID) 325420407.

The records, data and other information sought, including contents of communications, are stored at premises owned, maintained, controlled, or operated by Apple, an electronics communications

service and/or remote computing service provider headquartered at 1 Infinite Loop, Cupertino, California, in the Northern District of California. The information to be disclosed by Apple and searched by the government is described in the following paragraphs, and in Attachments A and B.

5. The warrant sought would authorize the government to search the records, data and information described in Attachment A for the evidence, fruits and instrumentalities of violations of and/or attempts to violate 21 U.S.C. § 841(a)(1) (distributing and/or possessing with intent to distribute controlled substances), 21 U.S.C. § 843(b) (using a communications facility in committing, causing or facilitating a drug trafficking felony), 21 U.S.C. § 846 (attempting and/or conspiring to commit the above-described offenses), 18 U.S.C. § 924(c) (using, carrying or possessing a firearm in relation to, or in furtherance of, a drug trafficking felony) and/or 18 U.S.C. § 922(o) (unlawful possession of a machinegun) (hereafter the "SUBJECT OFFENSES") described in Attachment B.

## JURISDICTION

6. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction," as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND REGARDING APPLE ACCOUNTS AND iCLOUD[1]

7. Apple is an American company that produces, among other things, mobile electronic devices like the iPhone wireless smartphone and the iPad tablet, each which use Apple's proprietary

[1] The information in this section is drawn from my own training and experience, the training and experience of other investigators familiar with such matters, and from information publicly available on Apple's website, including, but not limited to, the following: "U.S. Law Enforcement Legal Process Guidelines," available at *http://images.apple.com/privacy/docs/legal-process-guidelines-us.pdf*; "Manage and Use Your Apple Account," at *https://support.apple.com/en-us/HT203993*; "iCloud," at *http://www.apple.com/icloud/*; "What does iCloud back up?," at *https://support.apple.com/kb/PH12519*; "Apple Security Platform," at *https://www.apple.com/business/docs/iOS_Security_Guide.pdf*; and "Introduction to iCloud," available at *https://support.apple.com/kb/PH26502*.

iOS operating system. Apple also produces desktop and laptop computers, which run on its Mac OS operating system.

8. Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:

a. Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

b. iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct video calls.

c. iCloud is a file hosting, storage, and sharing service provided by Apple. iCloud can be utilized through numerous iCloud-connected services, and can also be used to store iOS device backups and data associated with third-party apps.

d. iCloud-connected services allow users to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on icloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iWork Apps, a suite of

productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

e. Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

f. Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

g. Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

h. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

9. Apple services are accessed through the use of an Apple Account (formerly referred to as an "Apple ID"). Apple Accounts are usually created as part of the initial setup of an Apple device but may also be created using Apple's iTunes or iCloud services. A single Apple Account can be linked to multiple Apple services and devices, allowing it to serve as a central authentication and syncing mechanism. In my training and experience, nearly all users of Apple mobile devices,

including Apple iPhones, create and use Apple Accounts with those devices. This is because many of Apple's most popular services, including App Store and iCloud, are inaccessible from, or have limited functionality on, devices that are not signed in to an Apple Account.

10. Apple Accounts can be identified by, among other things, a full email address submitted to Apple by the user. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). An Apple Account may be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to the "primary" email address the user submitted. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple Account by the user.

11. Apple captures information associated with the creation and use of an Apple Account. During the creation of an Apple Account, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple Account can be changed by the user through Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

12. Additional information is captured by Apple in connection with the use of an Apple Account to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and Apple's website. Apple also maintains records reflecting a user's app purchases

from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

13. Apple also maintains information about the devices associated with an Apple Account. When a user logs in to an Apple Account using an Apple device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's Apple iPhone is linked to an Apple Account when the user signs in to FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple Account, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, and repair histories for associated Apple devices.

14. Apple provides users with at least five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, often contains data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS (Apple) device 'backups,' which commonly contain a user's photos and videos (including photos and videos taken with the iOS device itself, or which are sent to the iOS

device by another device and saved by the user, as well as "screenshots" taken by an iOS device user, which depict the contents of an iOS device's display at the moment they are taken), text messages (including iMessages, Short Message Service ("SMS") messages (standard text messages) and Multimedia Messaging Service ("MMS") messages (messages that include multimedia content, such as photos or videos, which commonly appear alongside text messages in an iOS device's messaging application)), information regarding email sent, received or accessed through Apple's proprietary iOS Mail application (specifically, email "header" information, containing "to" and "from" addresses, the date, and the subject line), voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data from multiple iOS devices, including from iOS devices that are no longer in use. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Information about, and/or the content of, emails sent, received or accessed on the iOS device using third-party email applications, like Gmail and others, is also commonly contained in iOS device backups. Moreover, iOS device users can also choose to backup to iCloud the content of email sent, received or accessed through Apple's proprietary iOS Mail application (as opposed to mere header information for such emails, as is commonly contained in an iOS device backup, as described above). Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple. In my training and experience, I have learned that when the user of an iOS device connects it to an Apple Account, the device will, by default, send iOS device backups to iCloud unless and until the user affirmatively deactivates that function. Because such iCloud backups occur automatically by default, often in the overnight hours, I have also learned that individual iOS device users may not even know they are happening. While iOS device backups may also be manually sent to, or deleted from, iCloud, I have learned that this is uncommon among iOS device users, since

disabling the default backup setting risks the loss of photos, contacts, messages and other valuable data in the event the iOS device is lost or broken.

15. In my training and experience, evidence of who has used an Apple Account and from where, and evidence related to criminal activity of the kind described in this affidavit, is often found in the types of records, data and information described in Attachments A and B. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

16. In my training and experience, communications, records, data and information stored by Apple in connection with an iOS device user's Apple Account, including those that are backed up to iCloud, often constitute direct evidence of criminal offenses committed by the device user. Such records, data and information also commonly include data reflecting the iOS device's physical location on dates and times relevant to the investigation. It is also my experience, as described further below, that instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate crimes like the SUBJECT OFFENSES. In most cases, as described above, such records, data and information are automatically backed-up to iCloud when created, received, sent, saved or viewed with or on an iOS device.

17. In addition, an Apple Account user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time.

As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

18. Apple Account activity may also provide relevant insight into the account user's state of mind, as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

19. Information associated with, or stored in, an Apple Account may also lead to the discovery of additional evidence, in my training and experience. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services employed in committing the crimes under investigation or used to communicate with co-conspirators. Also, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

20. Considering the above, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services, as described above. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

**THE INVESTIGATION**

21. On March 21, 2026, FSPD Officer Ryan Grayham was driving a marked patrol unit in Fort Smith, Arkansas, when he observed a Dodge Charger being driven without a driver's side mirror

or a functional license plate light. Officer Grayham activated his emergency lights and stopped the Charger on Towson Avenue. When he approached the Charger's driver and sole occupant, later identified as COLEMAN, Officer Grayham identified himself and explained the reasons for the traffic stop. In so doing, Officer Grayham detected a strong odor coming from within the Charger that he associated with marijuana, based on his training and experience. The Charger, displaying Oklahoma license plate number JJ2713, was found to be registered to COLEMAN and a female.

22. Officer Grayham asked COLEMAN for his driver's license and proof of insurance. COLEMAN said his insurance information was online, but that he could call his mother to obtain it. COLEMAN then used a blue Apple iPhone he was carrying (hereafter the "Blue Apple iPhone") to make a call. Officer Grayham directed COLEMAN to get out of the car, and COLEMAN eventually complied. Before and after he exited the Charger, FSPD cameras captured video of COLEMAN holding the Blue Apple iPhone. The following three (3) photographs are taken from that video:




*Photo 1*: COLEMAN with the Blue Apple iPhone



*Photo 2*: COLEMAN with the Blue Apple iPhone



*Photo 3*: COLEMAN with the Blue Apple iPhone

23. In the course of the traffic stop, officers asked COLEMAN if there was anything illegal in his Charger. COLEMAN said there wasn't. Officer Grayham told COLEMAN he nonetheless intended to search the Charger, based on probable cause. COLMAN disagreed. At about this point in the traffic stop, FSPD cameras captured video of COLEMAN using the Blue Apple iPhone to tell someone the police were going to search his car. COLEMAN eventually told the officers there was "a little bit of weed" in a backpack in the Charger. He then stood at the rear of his vehicle while they searched it.

24. Inside the Charger, officers found three clear zipper baggies, each of which contained a green vegetable substance they recognized as marijuana, based on their training and experience.[2] Marijuana is a Schedule I controlled substance, under federal law. They also found a box of disposable 'vape' devices labeled as containing THC[3], an amount of THC wax, more empty zipper baggies, a digital scale, a large number of commercially packaged cigarette papers, and $691.00 in cash. Officer Grayham's report notes that "[a] total of 57 grams of THC wax, marijuana flower, and THC wax vapes" were found in COLEMAN's vehicle. Between the Charger's driver's seat and center console, officers also found a loaded Glock 19 9x19mm semi-automatic pistol with a red colored device affixed to the rear of its slide. Officers suspected the red device was a machinegun conversion device (MCD) commonly known as a "switch," or a "Glock switch." All of these items were seized from the Charger and COLEMAN was arrested on state drug and gun charges. The Blue Apple iPhone was also seized. While at the jail, FSPD video shows that COLEMAN, without indicating any surprise or confusion, signed a form listing the Glock pistol as among the items seized from him.

25. FSPD investigators have advised me their department has received intelligence indicating that COLEMAN is, or has been, associated with a Fort Smith-area criminal street gang calling itself "1400," or the "1400 Crew." According to FSPD, "1400" is suspected of involvement in one or more homicides in the Fort Smith, Arkansas, area in recent years, as well as other criminal activity such as drug distribution. Supporting FSPD's intelligence regarding COLEMAN's

---

[2] From images captured by FSPD, I also recognize the substances in these three baggies as marijuana, based on my own training and experience. FSPD advises these substances have been submitted to the Arkansas State Crime Laboratory for confirmatory chemical analysis.

[3] I know from training and experience that "THC" is a common acronym for tetrahydrocannabinols, a psychoactive substance found in, and sometimes extracted or derived from, marijuana. THC is itself a Schedule I controlled substance, under federal law.

involvement with the "1400 Crew," video footage from the March 21 traffic stop shows that COLEMAN has a tattoo on his forearm that reads "1400." *See* Photo 3, above.

26. Considering my training and experience, I have probable cause to believe that COLEMAN possessed the marijuana found in his Charger for purposes of distribution, rather than merely for his own personal use. Informing this conclusion is COLEMAN's simultaneous possession of multiple, individually-bagged quantities of marijuana (allowing ready distribution to more than one customer), a number of empty similar baggies (allowing for further division of the supply, as needed), a large quantity of commercially-packaged cigarette rolling papers (far exceeding what an individual smoker might reasonably require), multiple additional products labeled as containing THC (suggesting diversified product offerings), a digital scale (useful in dividing and packaging drugs for resale), several hundred dollars in cash (likely drug proceeds, considered in context) and a loaded firearm (commonly carried by drug dealers to protect their supplies). I have also learned, from training and experience, that modern drug dealers almost invariably use wireless telephones, like the Blue Apple iPhone, to facilitate their illegal activities, such as by communicating with sources of supply and customers. Common uses of such devices include arranging drug transactions, sending and receiving electronic payments for narcotics, and warning criminal associates of police activity.

27. I also know from my training and experience that a "switch," like the suspected one found affixed to COLEMAN's Glock pistol, is a type of MCD that can enable semi-automatic pistols to fire automatically. In other words, a switch can allow a compatible handgun to "shoot automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). As such, an installed and functional switch converts a compatible semi-automatic handgun into a "machinegun" within the meaning of 26 U.S.C. § 5845(b) and 18 U.S.C. § 922(o). I also know from training and experience that a switch is, by itself, a "part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into

a machinegun." Id. Consequently, even an uninstalled switch is a "machinegun," for purposes of 26 U.S.C. § 5845(b) and 18 U.S.C. § 922(o). While 18 U.S.C. § 922(o)(2)(B) exempts from prohibition those machineguns manufactured prior to 1986, I also know that "Glock switches," like that seized from COLEMAN, were not patented as an invention until 1998.[4] Additionally, after COLEMAN was arrested, I received and viewed a video recording produced by the 12th/21st Judicial District Drug Task Force (DTF). The video shows a DTF investigator test-firing the switch-equipped Glock pistol seized from COLEMAN on March 21. In the video, the investigator can be seen firing more than one shot from COLEMAN's Glock, without manual reloading, via a single function of the trigger. See 26 U.S.C. § 5845(b). In light of the above, I have probable cause to believe that COLEMAN's possession of the switch-equipped Glock pistol seized from him on March 21, 2026, constitutes a felony violation of 18 U.S.C. § 922(o)(1). See 18 U.S.C. § 924(a)(2).

28. From my training and experience, I know that, as illegal machineguns, "Glock switches" cannot be purchased on the open gun market. Much like illegal drugs, they must be found and purchased on the black market—a market which, like any other in the modern day, is almost invariably facilitated by the use of wireless telephones, like the Blue Apple iPhone. Also, because of a switch's ability to maximize damage and death, I have learned that American criminal street gangs increasingly prize them as symbols and instruments of power. I know from training and experience that street gang members commonly use the digital camera capabilities of wireless telephones, like the Blue Apple iPhone, to photograph and/or record videos of themselves and their associates holding, carrying and displaying switches and switch-equipped firearms, as well as narcotics and cash. Once created, such photos and videos are also commonly uploaded to the Internet or sent to specific recipients using wireless telephones, like the Blue Apple iPhone, with the intent of impressing or intimidating the viewer—often rival gang members. Additionally, evidence of who owns and has

---

[4] *See* U.S. Patent No. 5,705,763 (Jan. 6, 1998).

controlled the Blue Apple iPhone—something that is nearly always ascertainable from a wireless telephone's contents (either as found on the device itself, or in a remotely-stored device 'backup')—will also tend to prove ownership and control of the *other* property carried in the Charger, including the switch-equipped Glock pistol, marijuana, drug paraphernalia and other contraband. I therefore have probable cause to believe that records, data and information associated with the TARGET ACCOUNTS, as described in Attachments A and B, contain evidence, fruits and instrumentalities of COLEMAN's knowing violation of 18 U.S.C. § 922(o)(1), as well as of the other SUBJECT OFFENSES.

29. On March 25, 2026, I served an FBI administrative subpoena on Apple, asking it to identify any Apple Account(s) associated with the email addresses *jaylincbred@gmail.com* and/or *jaylinc28@yahoo.com*. Agents had identified these as likely email addresses for COLEMAN through open-source public records database searches. The results of those searches showed associations between COLEMAN's first and last name, the email addresses *jaylincbred@gmail.com* and *jaylinc28@yahoo.com*, and a known residential address for COLEMAN, on Mallory Lane in Fort Smith.[5] On April 3, 2026, Apple responded to the administrative subpoena, identifying the TARGET ACCOUNTS as Apple Accounts associated with those two email addresses. Materials provided by Apple, in response to the subpoena, also list "Jaylin Coleman" as the user of both TARGET ACCOUNTS. Also noteworthy, Apple's records for one of the TARGET ACCOUNTS—that associated with the email *jaylincbred@gmail.com*—reflect the account user's address as another residence in Fort Smith, Arkansas.

30. On April 7, 2026, I submitted a written request to Apple, asking it to preserve all records, data and information it holds in association with the TARGET ACCOUNTS for 90 days, in

[5] This same Mallory Lane address appears on COLEMAN's most recent Arkansas driver's license, issued on March 6, 2023.

anticipation of this search warrant application. In my training and experience, Apple routinely complies with such preservation requests by federal law enforcement agencies.

**PRIOR SEARCH WARRANT**

31. On April 24, 2026, I applied for, and the Court granted, an earlier search warrant for the same materials and evidence described in Attachments A and B to this Application (see W.D. Ark. Case No. 2:26-CM-00027). The deadline for executing that earlier warrant, and for Apple to provide any responsive materials, was May 8, 2026. I served the April 24, 2026, search warrant on Apple the same day it was issued. Apple, however, did not offer FBI access to the responsive materials until May 13, 2026. On advice of the United States Attorney's Office (considering certain dicta in *United States v. Nyah*, 928 F.3d 694, 700 (8th Cir. 2019)), FBI has not accessed, seized or searched those responsive materials since they were made available. It has also returned the April 24 search warrant as unexecuted. This Application requests a *new* warrant authorizing the seizure and search of the materials and evidence described in Attachments A and B, which are the same materials sought in the April 24 search warrant and now held in Apple's law enforcement portal. If and when the requested new warrant is issued, and after it is served on Apple, FBI will then access, download and search those materials on the authority of that new warrant.

**CONCLUSION**

32. Based on the above, I submit there is probable cause to believe that evidence, fruits, and instrumentalities of violations of and/or attempts to violate 21 U.S.C. § 841(a)(1) (distributing and/or possessing with intent to distribute controlled substances), 21 U.S.C. § 843(b) (using a communications facility in committing, causing or facilitating a drug trafficking felony), 21 U.S.C. § 846 (attempting and/or conspiring to commit the above-described offenses), 18 U.S.C. § 924(c) (using, carrying or possessing a firearm in relation to, or in furtherance of, a drug trafficking felony) and/or 18 U.S.C. § 922(o) (unlawful possession of a machinegun) are located in within records, data

and information held by Apple in association with the TARGET ACCOUNTS described in Attachment A. I therefore respectfully request that the Court issue the proposed search warrant, authorizing the search of those records, data and information for the items described in Attachment B.

## MANNER OF EXECUTION

33. I anticipate executing the proposed search warrant in accordance with the Electronic Communications Privacy Act—particularly 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A)—by using the warrant to require Apple to disclose to the government copies of the records, data and other information (including the content of communications and stored data) particularly described in Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

34. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. Because the warrant will be served on Apple, which has already compiled the requested records in response to the earlier, April 24 search warrant, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

35. It is respectfully requested that this Court issue an order sealing, until further order of this Court, all papers submitted in support of this Application, including the Application, this affidavit, and Search Warrant, and the requisite inventory notice (with the exception of one copy of the warrant and the inventory notice that will be left with Apple, and later provided to COLEMAN. Although COLEMAN has been charged with related state crimes, he has been released on bond and is believed to be unaware that the United States is pursuing evidence of the SUBJECT OFFENSES.

Premature disclosure of the contents of this affidavit and related documents may therefore have a significant negative impact on this investigation and could jeopardize its effectiveness by alerting COLEMAN to: 1) how the investigation is being conducted; and 2) what other evidence—particularly electronic—the government might pursue next. As such, sealing is appropriate so as to deny COLEMAN any further opportunity or incentive to flee, or to destroy or tamper with evidence.

Respectfully submitted,

_(Appearing by telephone call to 870-677-6076)_
Special Agent Timothy S. Barth
Federal Bureau of Investigation

Via telephone
15 MAY 2026
@ 2:14 pm

Attested to by the Affiant in accordance with the requirements of Fed. R. Crim. P. 4.1, by appearing via telephone call on this 15th day of May 2026.

HON. SPENCER G. SINGLETON
UNITED STATES MAGISTRATE JUDGE

**<u>ATTACHMENT A</u>**
**(1 page)**

**DESCRIPTION OF PROPERTY TO BE SEARCHED**

This search warrant applies to all records, data and information, in whatever form, including the contents of communications and any device backup and other 'iCloud' data, held by Apple, Inc., and its parent and subsidiary entities (hereafter collectively "Apple") in association with the following Apple Accounts (collectively the "TARGET ACCOUNTS"):

1. The Apple Account associated with email address *jaylincbred@gmail.com*, telephone number (479) 285-1875, and Apple Directory Services Identifier (DSID) 8332867844; and

2. The Apple Account associated with email address *jaylinc28@yahoo.com*, telephone number (479) 285-1875, and Apple Directory Services Identifier (DSID) 325420407,

which records, data and information are stored at premises owned, maintained, controlled or operated by Apple, an electronics communications service and/or remote computing service with headquarters in Cupertino, California, in the Northern District of California.

**ATTACHMENT B**
**(4 pages)**

**DESCRIPTION OF THINGS TO BE SEARCHED FOR AND SEIZED**

**I. Information to be disclosed by Apple, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, Inc., and its parent and subsidiary entities (hereafter collectively "Apple"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Apple, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Apple is required to disclose the following records, data and information to the government, in unencrypted form whenever available, for each of the Apple Accounts described in Attachment A (hereafter collectively the "TARGET ACCOUNTS"):

a. All records, data or information, in whatever form, regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b. All records, data or information, in whatever form, regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c. The contents of all communications associated with the account, including, but not necessarily limited to:

i. emails, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses

associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments; and

ii. instant messages, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

d. The contents of all files and other records stored in association with the account, whether in iCloud or elsewhere, including, but not necessarily limited to, all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

e. All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

f. All records, data and information, in whatever form, regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

g. All records, data and information, in whatever form, pertaining to the types of service(s) used;

h. All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

**APPLE IS ORDERED TO DISCLOSE THE ABOVE INFORMATION TO THE GOVERNMENT WITHIN 14 DAYS OF THE DATE THIS SEARCH WARRANT IS ISSUED.**

**II. Information to be seized by the government**

The items to be searched for and seized include all records, data and information described in Section I, in whatever form, which constitute, either in whole or in part, evidence, fruits and/or instrumentalities of violations of and/or attempts to violate 21 U.S.C. § 841(a)(1) (distributing and/or possessing with intent to distribute controlled substances), 21 U.S.C. § 843(b) (using a communications facility in committing, causing or facilitating a drug trafficking felony), 21 U.S.C. § 846 (attempting and/or conspiring to commit the above-described offenses), 18 U.S.C. § 924(c) (using, carrying or possessing a firearm in relation to, or in furtherance of, a drug trafficking felony) and/or 18 U.S.C. § 922(o) (unlawful possession of a machinegun), including, but not necessarily limited to:

a. all communications, media, and related data, in whatever form, relevant to the above-described violations;

b. records, data and/or information, in whatever form, tending to help identify suppliers and buyers of controlled substances and/or any other contraband, to include illegal machineguns;

c. records, data and/or information, in whatever form, tending to indicate the types, amounts, and prices of controlled substances and other contraband bought and sold by any persons, as well as the dates, places, and amounts of specific such transactions;

d. records, data and/or information, in whatever form, tending to establish the physical location or travel of any user of the TARGET ACCOUNTS **between January 1, 2026, and March 21, 2026;**

e. records, data and/or information, in whatever form, tending to indicate any account user's intent, knowledge and/or state of mind with respect to the crimes under investigation;

f. records, data and/or information, in whatever form, tending to help identify any co-conspirator or aider and abettor of the crimes under investigation, including any that help reveal such persons' whereabouts;

g. records, information and/or data, in whatever form, tending to establish who created, owned, controlled and/or used the TARGET ACCOUNTS before, during, and after the offenses described above, including, but not limited to, logs, caches, registry entries, configuration files, saved usernames and passwords, documents, browsing history, cookies, "bookmarked" and "favorited" web pages, user-entered Internet search terms,

records of user-typed Internet addresses, user profiles, email, email contacts, "chat," instant messaging logs, photographs, correspondence, and any records tending to reveal the whereabouts of such person(s);

h. records, information and/or data, in whatever form, comprising or containing any passwords, encryption keys, or other similar devices necessary to access either the TARGET ACCOUNTS themselves or any electronic device associated with, or that has been used to access, the TARGET ACCOUNTS;

2:26-cm-00034

i. records, information and/or data, in whatever form, relating to the Internet Protocol (IP) addresses used to access the TARGET ACCOUNTS;

j. bank records, checks, credit card bills, account information, and other financial transaction records or information which are relevant to the above-described violations;

k. records, information and/or data, in whatever form, pertaining to the means and source of payment for account services (including any credit card or bank account number or digital money transfer account information);

l. records, information and/or data, in whatever form, evidencing the use of the TARGET ACCOUNTS in association with social media platforms and other similar chat-based applications' servers;

m. Any and all contextual information, in whatever form, necessary to understand the evidence, fruits and instrumentalities described above.

As used above: the terms "records," "information," and "data" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.